UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY DAVID PAINTER, JR., <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, <br><br> Defendant. | Case No. 14-cv-03658 NC <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 12, 17 |

Plaintiff Ricky David Painter, Jr., seeks judicial review of the Commissioner of Social Security's decision to deny his application for disability benefits. Painter argues that the ALJ made four errors in arriving at her conclusion that Painter could perform work as a housekeeper and cleaner/polisher. Painter argues that the ALJ (1) improperly rejected the opinion of an examining physician; (2) improperly found Painter to be not credible; (3) improperly rejected the lay witness testimony of an employment specialist; and (4) improperly rejected the lay witness testimony of Painter's mother.

The Court finds that the ALJ did not set out clear and convincing reasons for rejecting portions of the examining physician's assessment, did not provide clear and convincing reasons for finding Painter not entirely credible, ignored the testimony of the employment specialist, and improperly rejected the testimony of Painter's mother. Because the Court finds these errors are not harmless and the ALJ's conclusions are not supported by substantial evidence, the Court REVERSES the ALJ's decision. The Court
Case No. 14-cv-03658 NC

finds that considering the record as a whole, and appropriately crediting the witnesses, an award of benefits is appropriate.

Accordingly, the Court GRANTS Painter's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment. The Court REMANDS with instructions to the Commissioner of Social Security for an award of benefits.

## I. BACKGROUND

Painter is a 33-year old man with a high school education, which consisted of special education classes from pre-school through twelfth grade. A.R. 34, 212. He has been unemployed since January 3, 2011, the date that he alleges disability. A.R. 17. Painter previously worked as a food server at Six Flags, a dishwasher at Whole Foods, at the Safeway deli, and as a cashier at Taco Bell. A.R. 36-38. Painter explained that he was let go from all of his previous employment because he was "too slow." A.R. 22. Painter alleges disability based upon mild regressive retardation, depression, and dyslexia. A.R. 89.

### A. Agency Review

On May 5, 2011, Painter filed a Title II application for a period of disability and disability insurance benefits, claiming inability to work since January 3, 2011. A.R. 17. On August 25, 2011, at the request of the Commissioner, Painter underwent a psychological disability evaluation by a Registered Psychological Assistant (RPA), Jacklyn Chandler, Ph.D. A.R. 467-69. The Social Security administration denied Painter's claims on May 3, 2012. A.R. 17.

### B. Administrative Review

After his application was denied, Painter filed a written request for a hearing with an Administrative Law Judge ("ALJ") on May 9, 2012. A.R. 169-70. The hearing was held on December 12, 2012. A.R. 29-84.

//

### 1. Evidence in the Record

Painter provided four main pieces of evidence in the record, described below: (1) the report of Dr. Danzig; (2) the report of Dr. Chandler; (3) a letter from employment specialist Tim Savee; (4) a functional report from Painter's mother, Cynthia Voorhees.

First, on December 7, 2011, at the request of the California Department of Rehabilitation, Painter underwent an evaluation by clinical psychologist, Jay L. Danzig, Ph.D. A.R. 501-504. Dr. Danzig conducted a variety of tests, and concluded that Painter's reading comprehension was at a 9.8 grade level. A.R. 501-504. Dr. Danzig opined that Painter required a vocational training program that utilizes "rote, repetition, direct role modeling, and direct supervision." A.R. 502. In addition to verbal deficiencies, Painter had low range manual dexterity, and Dr. Danzig opined that Painter would need to "rely on gross motor muscle groups rather than fine motor dexterity." A.R. 503. Dr. Danzig noted that Painter "took an extremely restricted approach" to which jobs he was interested in. A.R. 504.

Second, the RPA, Dr. Chandler, also included a report on a variety of tests. A.R. 467-69. Chandler assessed that Painter had a major depressive order, in full remission. A.R. 469. Chandler opined that Painter had "overall intellectual ability within the low range, with moderately decreased attention and concentration, and mildly decreased pace." A.R. 469. Chandler opined that Painter is "likely to have mild difficulty maintaining pace" in a work environment. A.R. 470.

Third, Tim Savee, an employment specialist with the Napa Valley Support Services, evaluated Painter for assessment, employment preparation, placement services, and retention support. A.R. 367. Savee conducted 20 hour/5 day assessments, under close supervision, where he observed Painter conducting a variety of jobs. A.R. 367. On one assessment, Painter was placed as a turn-down server (housekeeper) for the Villagio Hotel. A.R. 367. Savee noted, Painter "got along under a limited list of repeated tasks and under close supervision. He was challenged by the precise way bedding linens and covers were required to be arranged." A.R. 367. Savee opined that Painter "is challenged to stay

Case No.14-cv-03658 NC           3

organized and apply himself consistently. He is imminently distractible and can make a poor impression, especially in a work environment." A.R. 367.

Fourth, Painter's mother, Cynthia Voorhees, completed a functional report about Painter's level of activity in his personal life. A.R. 259-66. Voorhees indicates that Painter is assisted by his mother, father, and brother in remembering to conduct many daily activities. A.R. 259-66. She writes that Painter "needs reminding over and over" to conduct household chores and that he "loses track of what he is doing and does something else." A.R. 261. Voorhees states that she writes Painter's checks and keeps track of his bank account and bills. A.R. 262.

### 2. The Hearing

At the hearing, Painter was represented by counsel. A.R. 17. Painter testified on his own behalf, and a vocational expert also testified. A.R. 17.

Painter testified that he lives by himself with his service dog, and he has done so for almost two years. A.R. 33-34. His mother and father help him handle financial matters. A.R. 34-35. Painter testified that he worked in the food service industry at Six Flags, Whole Foods, the Safeway Deli, and Taco Bell. A.R. 36-43. However, he was let go from each job for being too slow. A.R. 26-43. Painter testified that his family members help with household chores like dishes, laundry, and cleaning. A.R. 58. He has no friends, and he does not visit the library or go to church. A.R. 59.

### 3. The ALJ's Decision

On January 16, 2013, the ALJ issued a decision concluding that Painter was not disabled. A.R. 17-24. The ALJ follows a five-step process for determining whether an individual is disabled. See 20 C.F.R. § 416.920(a). Step one asks whether a claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920. At step two, the ALJ evaluates whether the claimant has a medically severe impairment or combination of impairments. *Id.* At step three, the ALJ considers whether the impairment or combination of impairments meets or equals any of the listed impairments under 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* At step four, the ALJ assesses whether the claimant is capable of

Case No.14-cv-03658 NC                   4

1  performing her past relevant work. *Id*. At step five, the ALJ examines whether the
2  claimant has the residual functional capacity to perform any other substantial gainful
3  activity in the national economy. *Id*. If the ALJ reaches step five and determines that the
4  claimant has the residual functional capacity to perform other gainful activity, the claimant
5  is not disabled. *Id*.

6  Here, at step one, the ALJ found that Painter had not engaged in substantial gainful
7  activity since January 3, 2011. A.R. 19. At step two, the ALJ found that medical records
8  supported three severe impairments: a depressive disorder, a learning disorder, and mild
9  regressive retardation. A.R. 19. At step three, the ALJ determined that Painter does not
10 have an impairment or combination of impairments that meets or medically equals the
11 severity of one of the listed impairments. A.R. 20. At step four, the ALJ determined
12 Painter was unable to perform past relevant work. A.R. 23. To assess Painter's residual
13 functional capacity at step five, the ALJ considered all symptoms and the extent to which
14 these symptoms can reasonably be accepted as consistent with objective medical evidence.
15 A.R. 21.

16 The ALJ found that Painter has a residual functional capacity to perform a full
17 range of work at all exertional levels but with the following non-exertional limitations:
18 "the claimant is limited to simple, routine, one-to-two-step unskilled tasks that are
19 classified as GED 1-1-1 (reasoning, math, language) and that do not involve working with
20 a conveyor belt or similar high production volume." A.R. 21. Based on Painter's residual
21 functional capacity, the ALJ determined that Painter would be unable to perform his past
22 work. A.R. 23. At step five, after presenting a series of hypotheticals to the vocational
23 expert, the ALJ found Painter "not disabled," based on Painter's age, education, vocational
24 experience, and residual functional capacity. A.R. 24. The ALJ concluded that Painter
25 could perform the requirements of representative unskilled, light occupations such as
26 Housekeeping Cleaner and Cleaning/Polisher. A.R. 27.
27 //
28

Case No.14-cv-03658 NC          5

**C.    Appeals Council Review**

Painter timely requested a review of the ALJ's decision by the Appeal's Council, and on June 19, 2014, the Appeals Council declined to grant the request for review. A.R. 1-5.  Painter now appeals the ALJ's determination.

Both parties moved for summary judgment. Dkt. Nos. 12, 17.  All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).  Dkt. Nos. 6, 9.

**II. LEGAL STANDARD**

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance.").  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.  *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

**III. DISCUSSION**

In his summary judgment brief, Painter claims the ALJ committed legal errors by (a) improperly rejecting Dr. Danzig's opinions; (b) finding Mr. Painter not credible; (c) rejecting the lay witness testimony of Painter's mother Cynthia Voorhees; and (d) rejecting the lay witness testimony of employment specialist Tim Savee.  Therefore, according to Painter, the Court should award disability benefits.

**A.    Examining Physician's Opinions**

First, Painter argues that the ALJ erred in rejecting Dr. Danzig's medical opinion. Painter contends that the ALJ's RFC finding failed to incorporate limitations assessed by Dr. Danzig, and the ALJ failed to reject Dr. Danzig's opinions by the correct legal standards.  Dkt. No. 16 at 13.

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Generally, "the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the un-contradicted opinion of an examining physician. *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir. 1990). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating [her] interpretation thereof, and making findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

In her opinion, the ALJ stated that she gave "great weight" to Dr. Danzig's opinion "because it is well supported by relevant findings and consistent with the record as a whole." A.R. 21. The ALJ found that Mr. Painter retained the residual functional capacity to physically perform work at all exertional levels but was mentally limited to "simple, routine one-to two step unskilled tasks that are classified as GED 1-1-1 (reasoning, math, and language) and that do not involve working with a conveyor belt or similar high productive volume." A.R. 22. The ALJ further explained that Mr. Painter was "deemed capable of understanding, remembering, and carrying simple, one or two step job instructions without difficulty, with only mild difficulties in maintaining pace, functioning under normal stress in a work setting, and interacting with supervisors, coworkers, and the public." A.R. 22.

However, Dr. Danzig opined that Painter required a vocational training program that utilizes "rote, repetition, direct role modeling, and direct supervision." A.R. 502. In addition to his verbal deficiencies, Painter had low range manual dexterity, and Dr. Danzig opined that Painter would need to "rely on gross motor muscle groups rather than fine

Case No.14-cv-03658 NC            7

1  motor dexterity." A.R. 503. The ALJ does not address these aspects of Dr. Danzig's
2  opinion, and her ultimate conclusion that Painter is capable of performing work as a
3  housekeeper and cleaner/polisher appears inconsistent with the limitations described by
4  Dr. Danzig. Therefore, it appears that the ALJ rejected portions of Dr. Danzig's opinion
5  without citing specific and legitimate reasons for doing so.

### B. Plaintiff's Credibility Finding

Second, Painter asserts that the ALJ erred by finding his subjective testimony not credible, and by not stating clear and convincing reasons for the credibility determination.

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effects of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Applying the two-step analysis, the ALJ determined that Painter's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms is not entirely credible." A.R. 22. Because the ALJ did not find evidence of malingering, the ALJ was required to set forth specific, clear and convincing reasons for rejecting Painter's subjective testimony, *Lingenfelter*, 504 F.3d at 1036, and to

consider the relevant credibility factors. *Light*, 119 F.3d at 792.

The ALJ provided two explanations as to why she discredited Painter's subjective complaints. First, the ALJ stated t hat "[t]he medical record establishes that the claimant is capable of a limited range of work at all exertional levels;" and Painter's vocational history, which includes work at Taco Bell, Whole Foods, and Safeway, "establishes that he has not attempted to perform work that is within his residual functional capacity." A.R. 22. The ALJ concludes that Painter was not capable of performing those jobs adequately, but instead, is capable of performing work at the GED 1-1-1 level, specifically, as a Housekeeping Cleaner and Cleaner/Polisher. A.R. 27. This determination is inconsistent with the opinion of Tim Savee, who observed Painter as a turn-down server (housekeeper) and concluded that Painter was "challenged by the precise way bedding linens and covers were required to be arranged." A.R. 366. The ALJ did not refer to Savee's assessment in rejecting Painter's testimony.

Second, the ALJ found that Painter was not credible because, according to his mother, Painter "is able to focus on television, movies, and video games." A.R. 23. Therefore, the ALJ notes, "his ability to focus on hobbies but not chores appears to be a function of his lifestyle" A.R. 23. However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001). "One does not need to be 'utterly incapacitated' in order to be disabled." *Id.* (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989). If a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Id.*

The pursuits that the ALJ mentions, watching television and playing video games, do not appear to be transferable to a work setting as a housekeeper, and the ALJ does not make a finding that they are transferable skills. Instead, the Court finds that the ALJ rejected Painter's testimony without providing specific, clear and convincing reasons.

Case No.14-cv-03658 NC          9

### C. Savee's Testimony

Painter next asserts that the ALJ improperly rejected the lay witness testimony of employment specialist Tim Savee.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(4)(e). Such testimony is competent evidence and "cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness.' Further, the reasons 'germane to each witness' must be specific." *Stout*, 454 F.3d at 1054.

Here, the ALJ did not address Savee's testimony at all. Savee evaluated Painter performing the exact job that the ALJ concludes that Painter is capable of performing. As noted above, Savee concluded that Painter was "challenged" by aspects of housekeeping. Therefore, the ALJ appears to have rejected Savee's opinion, but provides no reasons as to why. Thus, the Court concludes that the ALJ improperly rejected Savee's opinion without comment and therefore, without the requisite specific reasons.

### D. Voorhees' Testimony

Finally, Painter argues that the ALJ improperly rejected his mother's testimony. Voorhees stated that Painter spends much of the day sleeping and needs to be reminded to feed and walk his dog, take medications, and comb his hair. A.R. 287-295. In addition, he takes days to perform household chores because he loses focus. A.R. 22. The ALJ explained that she considered Voorhees' observations; however, because Painter is able to focus on video games, TV, and movies, there is no medical basis for the limitations described by his mother. A.R. 23. "Evidence provided by lay witnesses may be used to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). For example, "a lay person, though not a vocational or medical expert, was not disqualified from rendering an opinion as to how her husband's condition affects his ability to perform basic work

activities." *Id.* Thus, the conclusion by the ALJ that "there is no medical basis for the limitations described by his mother," is not a specific reason germane to Voorhees' opinions on the severity of Painter's impairments. Accordingly, as to this issue, the Court agrees that the ALJ improperly rejected Voorhees' opinion.

### E. Harmless Error

Finally, Painter argues that the ALJ's vocational hypothetical and RFC finding were invalid, and the ALJ's mistakes do not constitute harmless error. A vocational expert's testimony may only be relied upon if "the questions posed by the ALJ include all of the claimant's functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570-571 (9th Cir. 1995). Because the ALJ posed question to the vocational expert that did not include some limitations posed by Dr. Danzig, Savee's assessment, or appropriately consider Painter's pace and need for supervision, the RFC finding is inapplicable.

"ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate non-disability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout*, 454 F.3d at 1055-56). However, the Court has "the discretion to remand this case for the ALJ to further develop the record or to award benefits to Plaintiff." *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

Whether the Court should remand or award benefits is governed by a three part inquiry: (1) whether the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be

Case No.14-cv-03658 NC    11

disabled if his testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony." *Varney v. Secretary of Health and Human Services,* 859 F.2d 1396, 1401 (9th Cir. 1988) (*Varney II* ). "Rather, that testimony is also credited as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

Here, the Court finds that the ALJ failed to provide legally sufficient reasons for rejecting portions of Dr. Danzig's assessment, finding Painter not entirely credible, and disregarding Savee's work assessment, and discrediting the testimony of Painter's mother. Even without providing legally sufficient reasons for rejecting these opinions, the ALJ still found that Painter had the RFC to perform 1-1-1 jobs, and could perform only two jobs in the national economy, housekeeper and cleaner/polisher. A.R. 24. Thus, the ALJ, even crediting little of the testimony available in the record, concluded that Painter has a limited capability to perform jobs in the national economy.

When crediting Savee's assessment, Painter would not be successful at performing a job as a housekeeper. Additionally, Dr. Danzig noted that Painter had limited manual dexterity, which would appear to diminish his ability to perform as a cleaner/polisher. Finally, the record as a whole points to Painter's inability to work at an appropriate pace. Painter was fired from past jobs for being too slow. Additionally, his mother indicated that Painter is not able to conduct household chores in a timely manner. The vocational expert testified that for jobs as a housekeeper and cleaner, if a worker had a 15 to 20 percent reduction in his ability to produce what an average worker produces, he would not be able to keep his job. A.R. 79-80. Additionally, if a worker fell behind production 5 percent on a continual basis, that is the threshold for maintaining the job. A.R. 80.

Taken together, the Court finds that Painter is not capable of performing the two jobs the ALJ determined would be appropriate for an individual with his limited capabilities. Therefore, the Court finds that there are no outstanding issues to be resolved, and it is clear from the record that the ALJ would be required to find Painter disabled were the above evidence credited. *See Smolen*, 80 F.3d at 1292. Thus, an award of benefits is

1  appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

## IV. CONCLUSION

The Court finds that the ALJ failed to properly provide clear and convincing reasons for disregarding portions of Dr. Danzig's opinion; failed to provide clear and convincing reasons to discredit Painter's testimony; failed to address Savee's letter; and improperly rejected Voorhees' testimony.  If the ALJ properly credited these pieces of evidence, and considering the record as a whole, the Court concludes that an award of benefits is appropriate.  Even under the ALJ's erroneous analysis, Painter was only capable of performing two low skilled jobs in the national economy.  Thus, the Court GRANTS Painter's summary judgment motion, DENIES the Commissioner's motion.

The Court REMANDS with instructions to the Commissioner of Social Security for an award of benefits consistent with this order.

**IT IS SO ORDERED.**

Dated:  October 15, 2015

_____
NATHANAEL M. COUSINS
United States Magistrate Judge